IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| VERNE A. HODGE, JR. | : | CIVIL ACTION |
| | : | No. 07-87 |
| v. | : | |
| | : | |
| SUPERIOR COURT OF THE | : | |
| VIRGIN ISLANDS | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                              September 11, 2009

Plaintiff Verne A. Hodge, Jr. contends his current employer, Defendant Superior Court of the Virgin Islands, retaliated against him by failing to promote him to General Counsel, among other reprisals, due to his internal report of unlawful and unethical conduct by Superior Court personnel. He complains about an ordinary workplace grievance, not conduct protected under the Whistleblowers Protection Act, 10 V.I.C. §§ 121, *et seq*. (WPA). Because the record does not show he engaged in any protected activity, or the Superior Court took any adverse employment actions in retaliation against him, I grant summary judgment in the Superior Court's favor, dismissing Hodge's Amended Complaint with prejudice.

## FACTS

The Superior Court Office of General Counsel employs Hodge as Assistant General Counsel, a position he has held for ten years.[1] Hodge is disgruntled, believing he has been wrongly denied promotion to General Counsel. He believes he is entitled to the position and is better suited for the job than the Superior Court's current General Counsel, Queen E. Terry, Esquire.

---

[1] The Superior Court has employed Hodge for twenty-three years. He began his career as an accounting division payroll clerk from 1986 to 1995. Under the Superior Court's Study Leave Program, he attended law school and received his degree in 1995. He then served as a Superior Court judicial law clerk from 1995 until 1999, when he was hired as Assistant General Counsel.

1

Hodge believes he is entitled to the position because he acted as if he were General Counsel for nearly four years before Terry was hired to fill the vacant position.[2] Terry was hired on February 3, 2007, and arrived at the Superior Court as General Counsel on February 5, 2007. During the four-year period, however, Hodge's title remained the same, Assistant General Counsel.

Hodge disputes Terry was the better candidate for General Counsel. He does not dispute, however, the Court had legitimate reasons for hiring Terry. In Terry's prior service as counsel to the Virgin Islands Governor, she gained substantial experience in drafting and reviewing legislation. The Superior Court found this experience and knowledge best served the Court's new structure and the Virgin Islands judiciary as a whole. Terry also possessed years of trial and litigation experience as a public defender and prosecutor, experience the Superior Court highly values for its operational needs.

Terry's arrival at the Superior Court proved to be a catalyst for Hodge's accusations against the Superior Court. When former General Counsel Leon A. Kendall became a Superior Court Judge in 2003, Hodge expressed interest in the vacant General Counsel position to former Presiding Judge Maria M. Cabret. Hodge says she promised to promote him and gave him the key to the General Counsel's office in January 2004.[3] Although he occupied the General Counsel's physical office, the position remained unfilled until Terry was hired. Three months after Terry's arrival, Hodge filed his complaint on May 7, 2007.

---

[2]He asserts he "faithfully executed" and "actually performed the duties of General Counsel from June 15, 2003, until February 5, 2007, a period of nearly four years (three years and seven months to be exact)." Pl.'s Br. at 11; Am. Compl. ¶ 49.

[3]*But see* Deft.'s Br. at 5 n.2 ("Justice Cabret, the former Presiding Judge of the Superior Court, vociferously denies that she ever made a promise to Plaintiff that she would promote him to General Counsel of the Court.").

Hodge complains the Superior Court retaliated against him for sending a memorandum, dated November 30, 2006, to Presiding Judge Rhys S. Hodge, which he claims is a protected report under the WPA. In his memo, Hodge charged Administrative Judge Darryl D. Donohue and Court Administrator Glenda L. Lake, Esquire had improperly interfered with his sole prosecutorial discretion to dismiss an internal disciplinary action instituted in 2006 against Superior Court Deputy Marshall Lorel Sackey, thereby "defeating the proper administration of justice." Am. Compl. ¶ 9. He also charged Donohue and Lake exerted undue pressure on Hearing Officer Jeannette M. Davila, Esquire to go forward with the action, contrary to Hodge's advice and motions to dismiss.[4] Among numerous, generalized charges of his colleagues' "unlawful" and "unethical" conduct, he charged they had violated Sackey's "constitutional due process right to an independent and unbiased hearing officer." Pl.'s Br., Ex. A at 1-2.

Hodge charged the Superior Court with violations of "ethical and legal standards required for administrative disciplinary actions, including constitutional due process requirements" based on events surrounding one meeting which took place on November 17, 2006, among Judge Donohue,

---

[4]Hodge opposed prosecution of the disciplinary action a number of times during the period, October through December 2006, moving to dismiss for lack of evidence and sending memoranda to his colleagues advocating dismissal. He advocated for dismissal of the disciplinary action in his November 30, 2006 memorandum because:

> Deputy Marshal Sackey merely engaged in jargon and aphorisms common to the Virgin Islands without indicating the slightest intent to advise or conspire with others to break the law. While common jargon of the Virgin Islands as used by Mr. Sackey may be easily misconstrued, it does not, in the opinion of this officer, constitute unbecoming conduct.

Am. Compl., Ex. A. His position was rejected by his colleagues. A hearing was held in the disciplinary action on December 12, 2007, and Sackey's employment was terminated by the January 12, 2007 Decision and Order of Administrative Hearing Officer Jeannette M. Davila, Esquire.

3

Administrator Lake, and Sackey's supervisor, Chief Marshal Lawrence A. Walcott, Jr. Am. Compl. ¶ 7. They met to reconsider Hearing Officer Davila's November 16, 2006 Order dismissing the disciplinary action. After their meeting, Walcott filed a pro se motion for reconsideration of Davila's order of dismissal, seeking reinstatement of the action without consulting Hodge. Davila, by her November 17, 2006 Order, vacated her earlier order of dismissal and reinstated the disciplinary action.

Hodge found fault with this procedure, complaining the meeting should not have been held unless he and Sackey's personal counsel were present. He proclaimed to his colleagues he had exclusive control over all communications among Superior Court personnel involved in the disciplinary action. He insisted all communications with his "client," in this instance Walcott as Sackey's supervisor, should properly go first and only through him, the Superior Court's lawyer. He accused his colleagues of usurping his authority as the Superior Court's lawyer and breaching his purported sole discretion to prosecute disciplinary actions.

Hodge's November 30, 2006 memo was prepared in the course and scope of his assigned job duties. Even he contends he is ordinarily required, among other duties, "to prosecute disciplinary proceedings . . . and review [the Superior Court's] in-house procedures, rules, and conduct for legal and ethical sufficiency." Am. Compl. ¶ 3.

Hodge challenges a number of actions taken by Superior Court personnel, all of which he views as retaliation for his purportedly protected November 30, 2006 report of allegedly unlawful and unethical conduct, including the following reprisals:

(a) Defendant's humiliating eviction of Plaintiff, and the removal of Plaintiff's effects from his office.
(b) Defendant's humiliating relocation to unsuitable and intolerable worksites.

4

(c) Defendant's malicious order that Plaintiff work under intolerable working conditions after receiving notice from Plaintiff of those intolerable conditions.
(d) Defendant's failure to promote Plaintiff despite his timely, thorough and satisfactory performance of his duties, despite its promise to promote Plaintiff.
(e) Defendant's hiring of a less experienced attorney in matters particular to the Judicial branch than Plaintiff to the position promised to Plaintiff.
(f) Defendant's removal of Plaintiff's supervisory capacity.
(g) Defendant's hindering of the performance of Plaintiff's duties.
(h) Defendant's refusal to provide a reasonable ADA accommodation.
(i) Defendant's refusal to grant relief from its historical pattern of discriminatory denial of benefits and privileges of its professional employment to Plaintiff.
(j) Defendant's misrepresentations in ruse to force Plaintiff to resign.

Am. Compl. ¶ 53.

Hodge complains his personal effects were removed from the General Counsel's office to make room for Terry's arrival on February 5, 2007. He does not dispute the Superior Court had a legitimate reason for doing so, admitting there was a manifest lack of professional work space on Court premises. Instead, he complains about the way it was done, during his absence from the office, in an "unprofessional, duplicitous, and disrespectful manner." Pl.'s Br. at 7.

This removal came about when Presiding Judge Donohue[5] asked to meet with Hodge on February 5, 2007. Hodge complied, traveling to Donohue's St. Croix chambers in time for the appointment, only to discover he had to wait some three hours before the meeting commenced. Donohue then informed him Terry had been hired, she had arrived on the job, and Hodge's personal effects were being removed as they spoke. Hodge found this experience to be "humiliating," a "Gestapo-like surprise eviction." Am. Compl. ¶ 23.

Hodge complains all of his assigned work spaces, except the General Counsel's office, have been unsuitable for sundry reasons. On February 5, 2007, his personal effects were placed on a desk

---

[5]On December 19, 2006, Darryl D. Donohue ended his service as Administrative Judge and became Presiding Judge of the Superior Court, sitting in St. Croix.

in the Legal Secretary's office, adjacent to the General Counsel's office in the Alexander A. Farrelly Justice Complex, which houses the Superior Court in St. Thomas. He had worked at this desk from the time he started his career as Assistant General Counsel in 1999 until 2004, when he acquired the key to the General Counsel's physical office. He complained this desk lacked the privacy and confidentiality necessary for his work, and he was distracted by hallway and visitor noise. He was further distracted by individuals entering the office to meet with the General Counsel. The Court accommodated his concerns on the weekend of February 18-19, 2006, constructing a private office space around the desk area by building a wall with a door.

Once relocated to the newly constructed work space on February 20, 2007, he complained it was "a cramped and unventilated storeroom." Am. Compl. ¶ 41. He found it too small and he could not meet in the room with other attorneys and Superior Court personnel. He complained the room lacked ventilation, was intolerably hot, and allowed distractions from office personnel coming in to get supplies. The Court accommodated his concerns by ventilating the space. He found the ventilation intolerably cold. The Court adjusted the ventilation for Hodge. Although Hodge admits the adjusted ventilation was adequate for the performance of his duties, he complained the work space remained "no more than a cramped storeroom." Am. Compl. ¶ 45.

Because Hodge could not have General Counsel Terry's office, and there was a shortage of other office space suitable to him, he asserted his entitlement to work from home and telecommute at will. To this day, he maintains he is entitled to telecommute whenever he sees fit or needs to do so. He offers this as a practical solution and a reasonable ADA accommodation for his chronic

6

asthma condition.[6] It is undisputed, however, telecommuting is not one of the employment benefits offered by the Superior Court, such as medical insurance and retirement benefits.

Hodge alleges his asthma and consequent need to telecommute were well known to the Superior Court.[7] He frequently worked from home from 1995 through March 2, 2007. Although this informal arrangement left him open to accusations and suspicions he was not doing his work, he persists in his preference for telecommuting, instead of working on Superior Court premises.[8]

By letter dated March 2, 2007, Presiding Judge Donohue denied Hodge's request to telecommute, and directed him to report to the Superior Court for work every day during the normal workweek, pending further written notice. Donohue gave him permission to work anyplace he chose on Court premises, if Hodge did not want to work at his assigned desk. Hodge alleges Donohue refused his request to telecommute in retaliation for Hodge's November 30, 2006 report of allegedly unlawful and unethical conduct by his colleagues.

---

[6] Hodge contends telecommuting would allow him to "avoid many of the irritants of [the Court's] premises, such as dander from the flocks of pigeons that have apparently taken over the place, the frequent cold and flu symptoms of co-workers and the public, the exhaust from vehicles on the main thoroughfare that runs directly outside [Hodge's] new ground floor office's window, and the unregulated emissions of cruise ships from the nearby West Indies Corporation dock." Pl.'s Br. at 14.

[7] *See* Pl.'s Br., Ex. B at 2 ("[T]he Court informally accommodated my well known chronic asthmatic condition, as best it could, by allowing me to work after hours, and on weekends and holidays to make up for my absences. Unfortunately, given the on-site nature of accounting tasks [among his duties as a payroll clerk during 1986-1995], my frequent absences and hospitalizations during that time are well documented by the Court.").

[8] *See* Pl.'s Br., Ex. B at 2 ("Informal telecommuting, however, has left me vulnerable to unfair accusations and suspicions that I am not doing my work, despite my excellent record of job performance."); *see also* Am. Compl. ¶ 36 (noting Former General Counsel, Leon A. Kendall complained about Hodge's time and attendance and refused to approve Hodge's time-sheets unless Hodge performed his duties from the desk in the Legal Secretary's office).

On May 5, 2008, Hodge was relocated from the "storeroom" to an office on the first floor of the Family Court building, which was previously reserved for Judge Ishmael A. Meyers. Hodge remains in this office today.

Hodge does not dispute his present office has adequate space, ventilation, and privacy for the performance of his duties, but complains his office is not accompanied by suitable "benefits, privileges, and perks." Pl.'s Br., Ex. B at 1; Am. Compl. ¶ 46. He alleges the Superior Court has subjected him to a historical pattern of discrimination and antagonism by denying him these benefits for years, even before 2006. He believes these benefits are routinely given to other similarly situated but unidentified employees, but he provides no proof of this. He claims this pattern was broken only when he was promised the General Counsel position and was allowed to work in the General Counsel's physical office.

Specifically, Hodge believes his professional position entitles him to have a personal secretary, personal legal research resources, a private bathroom, the privilege of submitting his own time and attendance sheets, a cable television, a vehicle for telecommuting, a remote control device to open the parking-lot gate, electronic communication devices, and salary increases beyond the standard cost of living increases he has received annually over the years of his employment. He admits, however, he has access to Edotcia Thomas's secretarial services and the Superior Court's law library and bathrooms, but complains he must share these services, resources, and facilities.

**DISCUSSION**

Hodge contends his claims are properly brought under the WPA.[9] The record shows, however, his complaints fall outside the purview of the WPA. His non-material, often trivial, complaints do not serve the public policy goals of the WPA to redress wrongdoing by protecting legitimate reports by employees of "a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this territory or the United States." 10 V.I.C. § 122.

A whistleblower must show: (1) he engaged in conduct protected under the WPA; (2) his employer took adverse action against him; and (3) there was a causal connection between the protected conduct and the adverse action. *Johnson v. Gov't of the Virgin Islands*, 35 V.I. 27, 31 (Terr. Ct. 1996). Hodge has failed to present sufficient evidence to support any of the three elements

---

[9]Hodge's pleadings stated injuries cognizable under both the WPA and the Americans with Disabilities Act, 42 U.S.C. 12102, 12111-12117 (ADA). Although he did not expressly mention the ADA, this Court previously ruled "the injuries alleged to have been inflicted by [the Superior Court] are discrimination claims which would fall under the protection of the ADA." *See* Brotman, J., April 24, 2008 Slip Op. at 5.
    On June 26, 2007, Hodge moved to remand this action to the Superior Court of the Virgin Islands. By its April 24, 2008 Order, this Court denied Hodge's motion to remand, ruling his territorial law claims under the WPA are grounded in federal law. This Court so ruled because he pleaded discrimination due to his asthma disability, alleging injuries cognizable under the ADA.
    After the Superior Court had filed its answer on June 6, 2007, and after this Court had denied Hodge's motion to remand on April 24, 2008, he moved to dismiss his ADA claims on May 8, 2008, pursuant to Federal Rule of Civil Procedure 41(a)(2). He asserted he never intended to file a federal ADA claim, but merely sought to show the Superior Court's refusal to allow him to telecommute, as an ADA accommodation for his asthma, was an instance of retaliation prohibited under the WPA.
    On June 6, 2008, before this Court ruled on Hodge's motion to dismiss his ADA claims, the Superior Court moved for summary judgment on Hodge's WPA and ADA claims. The Superior Court argued it was entitled to judgment on his ADA claims because he failed to exhaust his administrative remedies, and because the Superior Court, as part of the Government of the Virgin Islands, is not subject to the requirements of the ADA.
    By its June 3, 2009 Order, this Court dismissed Hodge's ADA claims without prejudice and retained supplemental jurisdiction over his territorial WPA claims pursuant to 28 U.S.C. § 1367(a). Because Hodge's ADA claims have already been dismissed, this Court will not address the merits of Hodge's ADA claims in ruling on the Superior Court's motion for summary judgment.

of a prima facie case under the WPA, 10 V.I.C. § 122.[10]

Hodge did not engage in protected conduct. The WPA protects an employee's "report" to a "public body"[11] of a violation or a suspected violation of a law, regulation, or rule under territorial or United States law. 10 V.I.C. § 122. Even assuming his November 30, 2006 memo to Presiding Judge Hodge is a report to a public body, he has failed to show his internal report involved conduct protected under the WPA.

An internal report of wrongdoing might satisfy the protected conduct requirement in some cases, but courts have held the employee must make it clear to the employer the employee's actions go beyond the employee's assigned tasks and job duties. *See Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 193 (3d Cir. 2001) (holding a paralegal did not engage in the protected conduct under the False Claims Act where the paralegal's memorandum did not put his employer on notice a False Claims Act suit was a distinct possibility); *Skare v. Extendicare Health Serv., Inc.*, 515 F.3d 836, 841 (8th Cir. 2008) (deciding a nurse did not become a whistleblower by merely exercising her duties to report compliance problems at her facilities). Hodge fails to satisfy this

---

[10]A Virgin Islands employer is prohibited from discriminating and retaliating against employees as follows:
> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this territory or the United States to a public body unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action.

10 V.I.C. § 122.

[11]The WPA defines "public body" to include "the judiciary and any member or employee of the judiciary." 10 V.I.C. § 122(d)(5).

heightened burden for an actionable internal report.

Hodge's November 30, 2006 memo was an internal complaint, prepared during the ordinary course and scope of his duties as Assistant General Counsel. It was exactly the type of activity he was required to perform in fulfilling his duties as legal advisor to the Court. He never made it clear to the Superior Court his complaints went beyond grumbling about perceived infractions of his authority and his opinions on proper internal procedures. A reasonable reader of his report would not be put on notice of potential litigation against the Superior Court by identified persons for alleged constitutional due process violations, or his intent to investigate and pursue any such claims against the Court.[12]

Hodge's stated objections to the Superior Court's internal procedures do not rise to the level of cognizable violations of law, regulation, or rule under the law of any jurisdiction. His broad-brush charges of unlawful and unethical conduct in violation of another employee's constitutional due process right to an independent and unbiased hearing officer amount to his own personal preferences and self-serving opinions about how internal disciplinary actions should be conducted by the Superior Court against its employees. The authority he relies on does not support any legal or ethical grounds for his personal decrees. He provides no legal basis for his perceived authority to

---

[12]Hodge provided advice on what he perceived to be the Superior Court's poor practices, which in his view created general concerns about the Court's liability exposure. He did not provide a report of wrongdoing, which he believed would lead to specific litigation by him or anyone else. He merely informed the Presiding Judge of a perceived problem, and sought correction through the Court's internal procedures. *See* Pl. Br., Ex. A at 5 ("[T]he Office of the Court Administrator has failed to abide by the opinions of this office regarding this matter, and thereby exposes the Court to substantial and embarrassing legal action for repeated violations of due process principles. Accordingly, . . . this office respectfully resorts to your office and authority, as Presiding Judge, to persuade the Office of the Court Administrator to cease and desist from unlawfully and unethically violating due process principles in the Court's disciplinary proceedings . . . .").

11

exclusively control and enforce his proclamations of proper procedure, including his perception of his own exclusive prosecutorial authority and discretion.

Hodge raises only an ordinary workplace grievance, charging his colleagues usurped his own perceived authority to exclusively prosecute internal disciplinary actions. He ignores the Virgin Islands Legislature's choice to invest the Superior Court presiding judge and other personnel with duties to supervise and enforce internal procedures. *See* 4 V.I.C. § 72b(a) ("The presiding judge . . . shall be the administrative head of the court . . . . He shall be responsible for the observance by the court of the rules adopted by the district court governing the practice and procedure of the Superior Court and prescribing the duties of its judges and officers . . . . He shall supervise and direct the officers and employees of the court in the performance of their duties."); *see also* 4 V.I.C. §§ 91, 93(a), (i), and (j) (stating the Administrative Director "shall, under the supervision and direction of the presiding judge: . . . [f]ormulate and submit to the court recommendations for the improvement of the judicial system . . . ; [c]onsult with and assist the clerks of court, and other officers and employees of the court and of offices related to and serving the court . . . ; and [i]nvestigate complaints with respect to the operation of the court and make such recommendations as may be appropriate."); 4 V.I.C. § 94 ("All judges, clerks of the court and other officers or employees of the court and of offices related to and serving the court shall comply with all requests made by the Director for information . . . relative to the work of the court and of such offices . . . .").

Judge Donohue, Administrator Lake, and Chief Deputy Walcott exercised their statutory duties when they met on November 17, 2006, and consulted among themselves about proceeding with the disciplinary action against Sackey. Moreover, there is no evidence Judge Donohue or Administrator Lake exerted any improper pressure on Hearing Officer Davila to go forward with the

12

disciplinary action.  Although it is clear Hodge did not get the result he wanted, this does not show Davila's decision was unduly influenced, biased, or otherwise improper.

Hodge has not suffered any adverse employment action.  Although he charges various actions were reprisals taken by Superior Court personnel for his November 30, 2006 report, none constitutes a significant threat or denial of his compensation, terms, conditions, location, or privileges of employment within the meaning of the WPA.  No reasonable employee would have found the challenged actions sufficiently adverse to dissuade the employee from exercising his rights or making a report protected under the WPA.  *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006) (stating in a Title VII action alleging sex discrimination and retaliation, a plaintiff must show that a reasonable employee would have found the challenged act "materially adverse," meaning the act might well have dissuaded a reasonable worker from protected conduct).

Although Hodge complains the Superior Court did not promote him and hired General Counsel Terry instead, the plain language of the WPA does not define an adverse employment action to include a failure to promote.  Rather, the WPA expressly prohibits retaliatory actions "regarding the employee's compensation, terms, conditions, location, or privileges of employment."  10 V.I.C. § 122.  The Court's hiring of Terry did not alter Hodge's employment as Assistant General Counsel. His employment status remained the same, with no reduction in pay or benefits.

The Court has established legitimate non-discriminatory and non-retaliatory reasons for its decision to hire General Counsel Terry based on her objective, demonstrated experience and qualifications.  Hodge provides no evidence to disbelieve the Superior Court's articulated reasons, or believe an invidious reason more likely than not motivated the Court's selection of Terry.  He fails to provide any evidence his November 30, 2006 memo was a motivating factor in the Court's

13

decision to hire Terry.

Moreover, there is no proof of a causal link between Hodge's November 30, 2006 report and the Court's selection of Terry on February 3, 2007. During the three-year period prior to Hodge's report, when the General Counsel position remained vacant, he also was not promoted. There is no direct evidence Judge Donohue even saw the report prior to his decision to hire Terry, other than Hodge's personal conviction to the contrary. Thus, even though Terry was hired a short period after Hodge's report, this does not suggest Terry was selected in retaliation against Hodge. *See Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (stating "[w]here the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof . . . ."). As the Third Circuit has emphasized, "it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997).

Hodge's personal conviction he was the better candidate is immaterial and irrelevant. The relevant question is not whether the Superior Court made an unsound business decision in selecting Terry over Hodge. *See Fuentes v. Perski*, 32 F.3d 759, 765 (3d Cir. 1994) (stating evidence showing the employer was wrong or mistaken does not establish pretext because "the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent"). Instead, the relevant question is whether the Court selected Terry in retaliation against Hodge. There is no evidence to support any inference of a retaliatory motive in the Court's selection of Terry.

Although Hodge complains about the way in which his personal effects were removed from the General Counsel's office on February 5, 2007, and complains about the uncivil way in which Judge Donohue informed him of the move, his personal feelings of humiliation do not establish a tangible adverse employment action. An adverse employment action must be a significant change in employment status. *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see Flaherty v. Gas Research Inst.*, 31 F.3d 451, 457 (7th Cir. 1994) (a "bruised ego" is not enough in Age Discrimination in Employment Act context). "[M]inor or trivial actions that merely make an employee 'unhappy' are not sufficient" to establish an adverse employment action, "for otherwise every action that an irritable, chip-on-the shoulder employee did not like would form the basis of a discrimination suit." *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 787 (3d Cir. 1998) (citations omitted). The February 5, 2007 incident inflicted no direct economic harm on Hodge and no change in his title, compensation, responsibilities, or benefits.

An employer's assignment of office space does not constitute a material, adverse change in employment for purposes of either anti-discrimination laws or the WPA. *See Langley v. Merck & Co., Inc.*, No. 04-3796, 2005 WL 1279108, at *2 (E.D. Pa. May 25, 2005) (holding the move of an employee's office was not a material, adverse change in § 1981 racial discrimination context), *aff'd*, 186 Fed. Appx. 258 (3d Cir. 2006); *see also Shaner v. Synthes*, 204 F.3d 494, 506 (3d Cir. 2000) (holding the move of an employee's office and uncomfortable office temperatures were not adverse actions in the ADA discrimination and retaliation context); *Hunter v. Rowan Univ.*, No. 04-1498, 2007 WL 1038760, at *5 (D.N.J. Mar. 30, 2007) (holding the move of employee's office was not an adverse action in § 1981 racial discrimination context because title and compensation remained the same), *aff'd*, 299 Fed. Appx. 190 (3d Cir. 2008).

Hodge gripes about his various work spaces, but he does not show the Superior Court took any adverse employment actions against him. Although he was moved to locations he found inferior and undesirable, there is no evidence the work sites were objectively inadequate for the performance of his duties.

Moreover, once Terry arrived in the General Counsel's office, and Hodge could no longer take advantage of the vacant office space, his dissatisfaction about working conditions was incurable. The Superior Court took extraordinary efforts to address his seemingly interminable demands and personal sensitivities, even though on-site professional office space was sparse. After March 2007, Judge Donohue allowed him to work anyplace on Superior Court premises suitable to Hodge. From May 5, 2008, to the present, Judge Donohue allowed Hodge to occupy an office formerly occupied by Judge Meyers.

None of the changes in Hodge's working conditions can reasonably be viewed as tangible adverse employment actions causally linked to his November 30, 2006 report. Hodge, not the Superior Court, was the moving force for all changes in his work spaces, except for his removal from the vacant General Counsel's office to make room for Terry. The Court thereafter moved his office only at his insistence to accommodate his personal preferences. On the record as a whole, no inference of retaliatory animus can be drawn from the temporal proximity of his report to any subsequent changes in his work spaces.

Hodge remains dissatisfied because he does not have certain benefits, privileges, and perks, and complains the Superior Court long denied him these benefits even before his purportedly protected report was made in 2006. The Superior Court's refusal to meet his demands does not rise to the level of an adverse employment action. The professional benefits he desires do not affect or

alter the terms and conditions of his employment, because "an adverse employment action must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Langley*, 2005 WL 1279108, at *3. There is no evidence the Superior Court extends these perks to other similarly situated professionals. Furthermore, Hodge's longstanding complaints about his lack of perks cuts against finding a causal connection between his report and any denial of benefits.

The Superior Court's refusal to allow Hodge to telecommute is not an adverse employment action. Telecommuting is not a benefit of employment offered by the Superior Court. Hodge cannot transform the Superior Court's past tolerance of his telecommuting into a "right" and "privilege" to telecommute in the future. Moreover, he has not shown any causal link between the Superior Court's refusal of his request to telecommute and his 2006 report. The timing of these events alone is insufficient to infer causation. When Judge Donohue denied his request to telecommute on March 2, 2007, the Court simply refused to continue an informal arrangement which had proved to be unworkable.

Hodge can show no causal link between his purportedly protected whistleblowing activity in 2006 and any of the actions he challenges as retaliation.

An appropriate order follows.